303 So.2d 864 (1974)
John EAGER d/b/a Eladco Signs
v.
Chester COLES et al.
No. 10011.
Court of Appeal of Louisiana, First Circuit.
November 12, 1974.
Rehearing Denied December 16, 1974.
Writ Refused February 7, 1975.
Arthur Cobb, Baton Rouge, for appellant.
Jerry H. Bankston, Baton Rouge, for Chester Coles.
Ben W. Lightfoot, Baton Rouge, for Frank Sadler and Don Landers.
Before SARTAIN, ELLIS and de la HOUSSAYE, JJ.
ELLIS, Judge:
This is a suit by plaintiff John Eager, doing business as Eladco Signs, for damages flowing from the alleged unauthorized use of certain sketches and designs made by plaintiff in the construction of advertising signs by the defendants. The defendants are Chester Coles, Frank Sadler, Don Landers and Vic Angeli. After trial on the merits, judgment was rendered dismissing plaintiff's demands and he has appealed.
Chester Coles is the owner-operator of Coles Florist, and the owner of Coles Plaza, a shopping center in Baton Rouge. Mr. Coles' flower shop occupies some of the space in the shopping center, and Mr. Sadler and Mr. Landers own a store in the center known as the Cracker Barrel.
Prior to the beginning of construction of the shopping center, plaintiff approached Mr. Coles about the repair of a sign on the site, which was then occupied only by the florist shop. On learning that Mr. Coles intended to build a shopping center on the site, Mr. Eager asked if he could bid on the sign work. He discussed the design thereof with Mr. Coles and with Messrs. Sadler and Landers, and prepared sketches, which he submitted to those defendants, together with a bid to do the *865 work. Because plaintiff's bid was considered too high, the sketches were shown to other sign companies, who also bid on the job. The contract was eventually awarded to defendant Vic Angeli.
The testimony of the parties is quite contradictory. Plaintiff testified that he called Mr. Coles on noticing that his old sign was malfunctioning and learned that the shopping center was to be built. He requested an opportunity to talk to Mr. Coles about the signs for the shopping center, and subsequently called on him. He stated that Mr. Coles told him he had already talked to two other sign people, and had a price from one of them for a rectangular single faced sign to go on the building. Mr. Eager said that he suggested a directory type pylon sign, and discussed the idea with Mr. Coles. After several days work, a drawing of a proposed pylon sign was prepared by plaintiff. He stated that, except for the fact that Mr. Coles insisted that his name be in script, the entire sign was conceived and executed by him.
Mr. Eager testified that he left the drawing, a sample of the aluminum extrusion to be used as a frame for the sign, samples of the plastic to be used on the faces and samples of the letters he proposed to use. After some discussion with Mr. Coles, plaintiff testified that a final version of the sign was agreed on, and that he presented a full proposal, with specifications and prices, to Mr. Coles.
Shortly thereafter, Mr. Eager says that he met with Mr. Sadler and Mr. Landers to discuss their sign. Thereafter, he worked up two designs, which he drew up and showed to them. One of these proposed designs is similar in shape to the sign eventually used, but uses block letters rather than the Old English letters eventually used. It also employs the same aluminum extrusion frame proposed to Mr. Coles. Mr. Eager said that he was the only person in Baton Rouge who knew about that extrusion.
Plaintiff then learned that Mr. Angeli was preparing a proposal, using the same aluminum frame, and a design substantially like the design submitted by him. At that time, he testified he warned Mr. Coles not to use his design, and was assured that Mr. Angeli's design was supposed to be different. Eventually, Mr. Angeli was given the job, and built a sign substantially the same as that proposed by Mr. Eager.
Mr. Coles testified that he never talked to Mr. Eager on the phone, but that Mr. Eager did call on him. They discussed a sign for the new shopping center, and Mr. Coles said he drove Mr. Eager to another shopping center where he showed Mr. Eager a pylon type directory sign, which he said was the kind of thing he wanted. He then stated that the two of them sat down together and worked out a satisfactory design, each of them making various sketches. He testified that when Mr. Eager presented the drawing, he was advised that it would be used to get other bids, and that Mr. Eager said that he didn't care if Mr. Coles got prices "because no one else could get that material anyway." He said that throughout the negotiations, Mr. Eager never told him that bids could not be taken on the design or asked him to pay for it.
Mr. Sadler testified that he and Mr. Landers told Mr. Eager exactly what they wanted in the sign, down to the color and the type of lettering. He said that the size of the sign was determined by the architect.
Mr. Angeli testified that he was shown the sketch and the aluminum frame sample by Mr. Coles, and that the sign was changed very little from the sketch. However, he stated that he made his own drawing, in which he changed the shape of the ends of the sign in the directory, changed the size of the sign, raised it up, changed the way the directory signs were mounted on the poles, and took off some parts at the bottom. He stated that the way Mr. Eager had the pylon sign designed it was impossible to add additional signs to the directory *866 at the bottom. He also testified that the aluminum frame extrusion used was a standard catalog item from the Sign-ex Company, and that the particular shape used on the sign appeared in the catalog as No. T-15, Classical. He also testified that he made no charge for design work, and that sign designs could be ordered out of the trade magazines for from $25.00 to $50.00.
Plaintiff couches his legal argument in terms of common law copyright, and the district judge, without recognizing its applicability in Louisiana, denied recovery because he found that plaintiff had failed to meet the requirements of the law under which he made his claim. We find that the trial court reached the correct result. However, we further find that the common law of copyright has not been received into Louisiana, a civil law jurisdiction.
It is clear from the testimony above outlined that there was never any contract or agreement reached by the parties hereto. The essence of plaintiff's claim is that the defendants utilized the product of his expertise in constructing the sign without compensating him for it. If this must be translated in legal conceptual terms, we think plaintiff is claiming the existence of a quasi contract under Article 2292-2294 of the Civil Code, giving rise to the unjust enrichment of the defendants. See Articles 1964-1967, Civil Code, which may be applied analogically to quasi contracts.
If plaintiff has some species of property right in the drawing he made or the concept he allegedly created, the unauthorized use thereof by defendants might well create a cause of action under Article 2315 of the Civil Code.
However, under either of the above approaches, we do not believe that plaintiff has proven his case. We think the preponderance of the evidence shows that the concept represented by the drawings was as much the product of the intellect of the defendants as of that of the plaintiff, and that it was not particularly original in the first place. We further find as a fact that plaintiff was aware that his drawings were to be used in obtaining bids.
Plaintiff did not get this job because his bid was too high. We can see no reason why he should recover damages for something which he had to do in any event to bid on the job; which could have been duplicated by any competent sign company bidding on the job; and which he knew was going to be used in obtaining other bids.
The judgment appealed from is affirmed, at plaintiff's cost.
Affirmed.